**Jane CATLETT, et al., Plaintiffs,**

v.

**MISSOURI STATE HIGHWAY COMMISSION, et al., Defendants.**

**No. 78–4061–CV–C.**

United States District Court, W.D. Missouri, Central Division.

Dec. 13, 1985.

---

1016

---

Lisa Van Amburg, Karen Plax, Raytown, Mo., for plaintiffs.

John Gladden, Asst. Counsel, Paula Lambrcht, Asst. Counsel, Missouri Highway & Transp. Com'n, Jefferson City, Mo., for defendants.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

This is a class action sex discrimination case brought pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. The Court previously ordered the suit to be severed into separate trials on the issues of (a) liability and (b) prospective equitable relief, monetary damages and attorneys' fees. In its order of December 5, 1983, the Court found defendants liable under Title VII for sex discrimination against the four individually-named plaintiffs for failure to hire them as maintenance crew members, and liable for sex discrimination against the class in recruitment and hiring since 1975. *Catlett v. Mo. Highway & Transp. Com'n,* 589 F.Supp. 929 (W.D.Mo.1983) (Catlett I).

Pending before the Court are the parties' motions for summary judgment on various issues concerning remedial relief pursuant to Title VII. There is no genuine issue as to the following material facts, and so under Fed.R.Civ.P. 56 summary judgment is appropriate on the following specified issues.

## I. TITLE VII MONETARY RELIEF

### A. *Back Pay for Individually-named Plaintiffs*

Defendants argue that because the jury verdict was adverse to the four named plaintiffs on their § 1983 claim, remedial relief for those plaintiffs would be improper. For two reasons, the Court disagrees.

First, the defendants have not previously raised this issue of collateral estoppel. Thus, the Court is faced with the identical problem presented to the Eighth Circuit in *Goodwin v. Circuit Court of St. Louis County, Mo.,* 729 F.2d 541, 549 n. 11 (8th Cir.1984). There, as here, "counsel for all parties seem to have assumed that the court would make its own finding on the issue of discrimination, whichever way the jury verdict went on the § 1983 case." In *Goodwin* the court refused to apply res judicata against the Circuit Court. Defendants also cite *Brooks v. Carnation Pet Food Company,* No. 84–6105–CV–SJ–6 (W.D.Mo., Sept. 17, 1985) in support of their proposition. However, Judge Sachs distinguished the *Goodwin* case by noting that defendant Carnation Pet Food Company had raised the argument that the court is bound by estoppel in its proposed conclusions of law. *Id.* at slip op. 4 n. 3. In the present case, defendants' proposed conclusions of law failed to raise this issue.

Secondly, even if defendants had timely raised this issue, remedial relief would still be appropriate. In *Brooks, supra,* the plaintiff's Title VII theory was one of disparate treatment, so the burden of establishing *intentional* discrimination was identical to that under § 1981. In the present case, the Court found evidence not only of disparate treatment but also disparate impact,[1] for which no intent need be established. Therefore, even if defendants' verdict on the § 1983 claim precluded a disparate treatment claim, the disparate impact claim would not be affected, and relief

---

1. "Just as the class members were subjected to a pattern of discrimination resulting from the biased interview process and the unregulated hiring procedure, similarly, these plaintiffs were the individual victims of the same practices." *Catlett I, supra* at 949.

would be appropriate. Calculation of back pay is discussed *infra*.

### B. *Back Pay for Class Members*

■ Excluding the individual plaintiffs, there are 161 claimants who seek back pay. Defendants seek to disqualify a number of class members on five different grounds: (1) lacked lightweight equipment experience; (2) lacked a valid Missouri driver's license; (3) stated no discrimination against them; (4) stated would not have accepted a job in maintenance had she been offered one; (5) no vacancies occurred within 20 miles of residence. During the remedial stage, the burden of proof is on defendants to demonstrate that individual applicants were denied employment for lawful reasons. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 362, 97 S.Ct. 1843, 1868, 52 L.Ed.2d 396 (1977).

■ In *Catlett I, supra* at 933, the Court made a finding of fact that the basic requirements for initial hire into the maintenance job are an eighth-grade education and an ability to operate lightweight motor equipment. Plaintiffs concede that ten of the class members did not list such experience on their claim forms, but wish to add new information by affidavit at this time. The Court finds it would be inappropriate to consider this additional evidence. Therefore, the following class members were not qualified applicants and not entitled to relief:

Bailey, Aughty L.
Buehler, Staci L.
Farris, Debra
Fowler, Debbie J. (Rodriquez)
Garrett, Jayne L. (Warren)
Lyons, Debbie J. (Deprender)
Maxwell, Lorenzo P.
Meyer, Paula (Fannon)
Rodgers, Janet L.
Stewart, Brenda.

The Court finds the remainder of defendants' attempts at disqualification to be specious. An applicant could readily obtain a Missouri driver's license, or if offered a job could relocate to live closer to the job site. Calculation of back pay for the remaining 151 members is discussed *infra*.

### C. *Calculation of Back Pay*
#### 1. *Fringe benefits of mitigation*

■ Plaintiffs are entitled to a back pay award pursuant to 42 U.S.C. § 2000e–5(g). In light of Title VII's policy to make whole a victim of discrimination, the award of back pay should include not only the straight salary, but raises and fringe benefits as well. *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 626 (6th Cir.1983); *Meyers v. I.T.T. Diversified Credit Corp.*, 527 F.Supp. 1064, 1070 (E.D. Mo.1981). Fringe benefits should include sick leave, vacation pay, pension benefits and any other benefits the claimants should have received but for the discrimination.

■ Additionally, under § 2000e–5(g), the claimants' interim earnings are to be deducted from the awarded back pay. Fringe benefits should likewise be deducted as interim earnings. Defendants argue that unemployment benefits or workmen's compensation should also be deducted. However, such benefits have been deemed by the Court to be a collateral source, and should not be deducted. *Donovan v. George Lai Contracting, Ltd.*, No. 84–4154–CV–C–5 (W.D.Mo. July, 1985). *See also Craig v. Y & Y Snacks*, 721 F.2d 77, 83 (3rd Cir.1983); *Rasimas, supra* at 627.

■ Thus, for the individually-named plaintiffs, each should be awarded back pay and lost fringe benefits from the date she was deprived of the use of those monies when the Highway Department hired a comparable male in her place. This amount will then be offset by that plaintiff's actual earnings and fringe benefits during the same time period.

### 2. Formula for Class Members

■ All parties agree that class-wide relief would be most appropriate in this case as explained in *Hameed v. Ironworkers,* 637 F.2d 506 (8th Cir.1980). However, the *Hameed* formula, *id.* at 520, must be adapted in this case to account for the discriminatory recruitment process. In its earlier findings of fact, *Catlett I,* 589 F.Supp. at 934, the Court determined the expected number of female hires for the years 1975–79. The Court presented figures for both a moderate and conservative definition of women expected to be hired.[2] While defendants argue it would be punitive to apply anything but the conservative definition, the Court finds that the moderate definition would best fulfill Title VII's statutory purpose of making persons whole for injuries suffered through past discrimination. Therefore, back pay calculations will be based on thirty-eight vacancies.[3] From these figures, the number of females actually hired should be subtracted, to equal the number of vacancies for which back pay must be calculated.

The next step is to assign the 151 remaining class members to subclasses based upon the year in which they applied for maintenance crew member positions. The number of vacancies for that year will be multiplied by the amount of money those positions would have yielded to date,[4] less the *average* interim earnings (as opposed to the highest interim earnings) of those class members during the relevant time period. The money will then be divided equally among the members of that year's subclass.

### 3. Pre-judgment Interest

■ Plaintiffs contend they should be granted an award of pre-judgment interest on any award of back pay and fringe benefits. Plaintiffs cite numerous cases where this Court and others have used their discretion to allow pre-judgment interest.[5] However, all these cases deal with private sector employers, not the government as employer. The general rule when claims against the government are involved is that interest is proscribed absent express statutory or contractual authorization. *Saunders v. Claytor,* 629 F.2d 596, 598 (9th Cir.1980).

Plaintiffs cite no state or federal statute authorizing prejudgment interest. They do argue that, under 42 U.S.C. § 2000e–16, when Congress extended Title VII benefits to public employees, Congress intended them to receive the same rights as extended to private sector employees. *See Chandler v. Roudebush,* 425 U.S. 840, 841, 96 S.Ct. 1949, 1950, 48 L.Ed.2d 416 (1976). However, numerous courts have since interpreted this section *not* to include the right to pre-judgment interest. *Saunders v. Claytor, supra,* at 598; *Blake v. Califano,* 626 F.2d 891, 893 (D.C.1980); *Richerson v. Jones,* 551 F.2d 918, 925 (3rd Cir. 1977).

While neither party has cited a case directly on point where interest was granted or denied in a Title VII case against a state agency as employer, defendants' argument is more persuasive since the state is clearly more analogous to the federal government than to private sector employers. There-

---

**2.**

|  | Total Hires | Females Hired | Expected Hires, Conservative Definition | Expected Hires, Moderate Definition |
|---|---|---|---|---|
| 1975 | 8 | 0 | 3 | 4 |
| 1976 | 22 | 1 | 8 | 10 |
| 1977 | 23 | 2 | 8 | 11 |
| 1978 | 26 | 5 | 9 | 12 |
| 1979 | 16 | 0 | 6 | 8 |

**3.** This includes one additional expected female hire during the period of January 1—May 31, 1980.

**4.** The Court rejects defendants' argument of calculating the earnings of initial hires only. Instead, calculations will be based on vacancies; therefore, initial plus successive hires will be calculated.

**5.** *Parson v. Kaiser Aluminum,* 727 F.2d 473 (5th Cir.1984); *EEOC v. Wooster Brush Co.,* 727 F.2d 566 (6th Cir.1984); *Washington v. Kroger Co.,* 671 F.2d 1072 (8th Cir.1982); *U.S. v. Lee Way Motor Freight,* 625 F.2d 918, 919 (10th Cir.1979).

fore, the Court finds that "other equitable relief" as authorized by 42 U.S.C. § 2000e–5 does not include pre-judgment interest.

### 4. *Special Master*

While plaintiffs contend a special master should be appointed to compute the back pay award, defendants believe such computation should be relatively easy once the Court has ruled on the necessary elements. In light of this order's rulings, plaintiffs should submit their calculations for back pay to the Court. Defendants will have an opportunity to object to any of the calculations, and if there are disagreements, then a special master may be appointed at that time.

### II. INJUNCTIVE RELIEF

While defendants argue that their voluntary efforts in changing their hiring practices are enough to preclude additional affirmative relief, the Court finds the long history of discrimination and the comparatively short history of attempts to end such discrimination warrant further measures in the following respects:

(1) The Court will retain jurisdiction until January 1, 1990, to monitor the implementation of this order and to require additional specific action, if necessary, to eradicate any remaining discrimination;

(2) Between the date of this order and January 1, 1990, the Missouri Highway and Transportation Commission shall comply with a hiring plan, attached to this order as Appendix A, the goal of which is to generate an actual pool of female applicants for maintenance jobs in District 8 of between 37%–48%, and to fill 37%–48% new vacancies for maintenance jobs in District 8 with women;

(3) To remedy the Highway Commission's discriminatory recruitment policy,

the title of the job category shall be changed from maintenanceman to reflect a job available to females as well as males. The Highway Department shall cease to utilize "word-of-mouth" or "walk-in only" recruitment, and instead implement recruitment literature and practices as set out in Appendix B, attached to this order;

(4) The Highway Commission shall develop a new application form which seeks relevant, non-discriminatory information from applicants and which incorporates the changes as set out in Appendix C, attached to this order;

(5) New procedures for interviews and the training of interviewers shall be implemented, as set out in Appendix D, attached to this order, to facilitate a non-discriminatory process for hiring;

(6) Those claimants who still seek employment as maintenance crew members shall be placed on a preferential hiring list. The first available vacancy at a particular maintenance shed shall be offered to the earliest applying claimant who would accept employment at that shed, and so on until the list of eligible claimants who seek employment is exhausted. Once a claimant turns down an offer of employment for any reason, she shall drop off the preferential hiring list, but may be considered for future employment.

### III. CONCLUSION

In light of the foregoing, it is hereby

ORDERED that defendants' motion for summary judgment is granted with respect to:

(1) disqualifying those class members who did not list lightweight motor equipment experience;

(2) precluding an award of pre-judgment interest; and

(3) declining the use of a special master absent any disagreements as to calculations of back pay.

It is further

ORDERED that the remainder of defendants' motion for summary judgment is denied. It is further

ORDERED that plaintiffs' motion for summary judgment is granted with respect to:

(1) back pay for individually-named plaintiffs;

(2) calculation of back pay for the remaining 151 class members as set out in this order; and

(3) additional affirmative relief as set out in the order and attached appendices.

It is further

ORDERED that plaintiffs should submit a motion for attorneys' fees and costs within twenty (20) days of the date of this order, with defendants having an additional fifteen (15) days to respond.

## APPENDIX A

### PLAN FOR HIRING

1. The Missouri Highway and Transportation Commission shall, on February 1, 1986, and January 1 of each subsequent year thereto to and including January 1, 1990, file a report with the Court and serve a copy of same upon plaintiffs, which report shall contain the following information:

a. A breakdown of applicants for maintenance crew positions by sex, by month;

b. A breakdown of hires for maintenance crew by positions, by sex, by month, by maintenance shed;

c. A census of all employees in maintenance crew positions by name, sex, job title, and District.

2. To support such an accounting, the Highway Commission shall maintain all applications filed for maintenance crew positions and all personnel selection forms for hirees to maintenance crew positions in District 8.

3. Between the date of this order and January 1, 1990, the Highway Department in District 8 shall generate an actual pool of applicants for the maintenance job in District 8 which consists of between 37%–48% women. The Court shall review the actual applicant pool yearly and if, at the conclusion of 1988, substantial progress has not been made, further stringent measures may be imposed by the Court. If by January 1, 1990, the Court determines that these goals have been met, the Court will terminate its jurisdiction.

4. Between the date of this order and January 1, 1990, the Highway Department in District 8 shall fill between 37%–48% new vacancies for maintenance crew jobs in District 8 with women (which may include eligible class claimants). The Court shall review the hire rates by sex yearly and if at the conclusion of 1988, substantial progress has not been made, further stringent measures may be imposed by the Court. If by January 1, 1990, the Court determines that these goals have been met, the Court will terminate its jurisdiction.

## APPENDIX B

### RECRUITMENT

1. The Highway Commission shall develop local newspaper advertisements which clearly indicate that women applicants are desired for the entry maintenance crew positions.

2. The Highway Commission shall develop a brochure to be distributed to the local high schools in the area which describes the job of maintenance person and shows photographs of men and women doing the jobs.

3. The Highway Commission shall identify the sources of women applicants in the

community: women's organizations, social service agencies, etc., and shall distribute a brochure to advise them of the openings for women in these positions.

4. The Highway Commission shall post notices of maintenance crew vacancies in areas accessible to all employees.

5. For each job vacancy, the Highway Commission shall: (a) Review all active job applications for persons who have indicated they would consider a job at that location. (b) If no active female applications are on file for that location, advertise the position on local radio stations and in the newspapers before interviewing. Also, contact the Missouri Employment Security Service, and local women's groups identified earlier to advise them of openings (if class member) before a selection is made.

## APPENDIX C

### APPLICATION PROCESS

The following questions will be listed:

a. Will you accept a position at any location in the state? __ Yes __ No

b. Check each of the locations where you would accept a position, if offered. (You must be willing to move within approximately a 20–30 minute drive to work.) (List all maintenance sheds in the district and have a small map with number codes showing where each shed is located.)

c. Of the locations check in item 2, indicate, in order of preference, the top three locations at which you would prefer to work.

d. Check any of the following skills in which you have been trained.

__ Operate Tractor    __ Diesel Engine Repair
__ Operate Backhoe    __ Gasoline Engine Repair
__ Drive Pickup Truck    __ Light Equipment Operator
__ Small Engine Repair    __ Heavy Equipment Operator
__ Snow Plow

e. Check any of the following skills which you now have from paid or unpaid experience.

__ Operate Tractor    __ Diesel Engine Repair
__ Operate Backhoe    __ Gasoline Engine Repair
__ Drive Pickup Truck    __ Light Equipment Operator
__ Small Engine Repair    __ Heavy Equipment Operator
__ Snow Plow

f. On section for employment history, add these instructions: ALSO LIST ANY SELF–EMPLOYMENT OR PAID OR NON–PAID FARM EXPERIENCE.

## APPENDIX D

### INTERVIEWS AND TRAINING OF INTERVIEWERS

1. A taped or videotaped description of the job will be developed to be shown to all interviewees.

2. The interview checklist shall be used in all interviews, that utilizes non-discriminatory, job-related criteria.

3. All discriminatory comments and references shall be eliminated from the interview.

4. No persons other than the interviewer and supervisory personnel shall be present for an interview.

5. All persons interviewing applicants for entry maintenance positions shall be given a one-day training course on conducting non-discriminatory interviews and using non-discriminatory evaluation criteria.

6. Supervisory personnel shall observe one interview per month of each interviewer for one year and evaluate the interviewer's conduct in the interview with regard to equal employment opportunity.