791 F.2d 1573
 5 Fed.R.Serv.3d 1152, 32 Ed. Law Rep. 915
 UNITED STATES of America, Appellee,
v.
STATE OF ARKANSAS; Arkansas Department of Education, Dr.
Don R. Roberts, Director; Wayne Hartsfield, Chairman; Jim
Dupree; T.C. Cogbill, Jr.; Rabie Rhodes; Dr. John W.
Cole; Harry A. Haines; Rev. Emery Washington; Jack E.
Meadows; and Dr. Ellis Gardner, Appellants,
Nemo Vista School District and South Conway County School
District, Appellees,
Conway County Board of Education; Ernest L. Rankin,
Secretary; J.D. Barnum, B. Jack Wilson; Leon Cowan; Fred
Burnett and James E. Leach, Members; East Side School
District No. 5, Peter Faison, Superintendent; Cain Cochran;
J.D. Hammond; Rupert Hemphill; Ladel Morris and Sammie
Chriswell, Members; Nemo Vista School District No. 8, T.O.
Adams, Superintendent; Haven Mahon; Clyde Stobaugh; J.V.
Ward; J.M. Carr and Henry Huett, Members; Wonderview
School District No. 2, John Dunsworth, Superintendent; Tony
Rowell; Bill Alvey; Wayland Duvall; James Wells; Don
Hillis and Doyle Franklin, Members, Conway County School
District No. 1; Tony L. Desalvo; Stanley McCoy; Tommy
Lee; Leroy Rainey and R.E. Mitchum, Members; Ernest
Rankin, Ex-officio Secretary.
UNITED STATES of America,
v.
STATE OF ARKANSAS; Arkansas Department of Education, Dr.
Don R. Roberts, Director; Wayne Hartsfield, Chairman; Jim
Dupree; T.C. Cobgill, Jr.; Rabie Rhodes; Dr. John W.
Cole; Harry A. Haines; Rev. Emery Washington; Jack E.
Meadows; and Dr. Ellis Gardner, Appellees,
Nemo Vista School District and South Conway County School
District, Appellant,
Conway County Board of Education; Ernest L. Rankin,
Secretary; J.D. Barnum, B. Jack Wilson; Leon Cowan; Fred
Burnett and James E. Leach, Members; East Side School
District No. 5, Peter Faison, Superintendent; Cain Cochran;
J.D. Hammond; Rupert Hemphill; Ladel Morris and Sammie
Chriswell, Members; Nemo Vista School District No. 8, T.O.
Adams, Superintendent; Haven Mahon; Clyde Stobaugh; J.V.
Ward; J.M. Carr and Henry Huett, Members; Wonderview
School District No. 2, John Dunsworth, Superintendent; Tony
Rowell; Bill Alvey; Wayland Duvall; James Wells; Don
Hillis and Doyle Franklin, Members, Conway County School
District No. 1; Tony L. Desalvo; Stanley McCoy; Tommy
Lee; Leroy Rainey and R.E. Mitchum, Members; Ernest
Rankin, Ex-officio Secretary.
 Nos. 85-1177, 85-1290.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 16, 1985.
Decided May 29, 1986.
 
 C. Randy McNair, Asst. Atty. Gen., Little Rock, Ark., for appellants.
 Charles J. Cooper, U.S. Dept. of Justice, Washington, D.C., for U.S.
 Robert V. Light, Little Rock, Ark., for South Conway County School Dist.
 Before BOWMAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 This is a school desegregation case in the remedial stage of proceedings. The State of Arkansas and the Arkansas Department of Education (hereinafter sometimes collectively referred to as "the State") appeal from a final judgment of the District Court requiring the State to finance the costs of desegregating the schools in Conway County, Arkansas. The State contends that the District Court committed reversible error, first, by reinstating the State as a defendant seven years after it originally was dismissed, and subsequently by ordering the State to pay the costs of desegregation without holding an evidentiary hearing on the issue of the State's liability. The State also contests the District Court's award of attorneys' fees as part of the costs. For the reasons stated below, we affirm in part, reverse in part, and remand for further proceedings.
 
 I.
 
 2
 In 1972, the United States filed suit against the State of Arkansas, the Arkansas Department of Education and its Director, members of the State Board of Education, and the school districts in Conway County, Arkansas, including the superintendents and boards of school directors of those districts. The complaint alleged that the state and local authorities had established segregated school districts through a series of school district consolidations and had continued to maintain those segregated school districts in violation of the Fourteenth Amendment to the United States Constitution and Title IV of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000c-6.
 
 
 3
 Before trial in 1973, the District Court dismissed the State of Arkansas and the Arkansas Department of Education but retained the individual members of the State Board of Education and the State Director of Education as parties to the proceedings. The court stated "that if it turns out ultimately that the Government is entitled to relief at the State level such relief will be obtainable by the operation of the Court's decree on the State defendants who are now before the Court." United States v. Arkansas, No. LR-72-C-290, slip op. at 2-3 (E.D.Ark. July 26, 1973). The case then proceeded to trial and the District Court determined that local authorities had segregated school students on the basis of their race both within and among school districts. The District Court made no finding of liability on the part of the remaining State authorities. The court stated that "the State Board has nothing to do with the structuring of local school districts." Id. at 5. The court noted that "[t]he geographical arrangement of the Conway County districts resembles a crazy quilt ... result[ing] from the gerrymandering of district lines in years past in deference to the [State] requirement of segregation...." Id. at 9. Nevertheless, the District Court denied the Government's trial motion to reinstate the State and the Department of Education as parties.
 
 
 4
 In 1979, the District Court ruled that the appropriate remedy for the unconstitutional structure of the local school districts was a consolidation of the Plumerville, Morrilton, and East Side School Districts into a new school district that became the South Conway County School District. In addition, the Nemo Vista District was enlarged slightly by the addition of a portion of the former East Side District. The local school districts, in an interlocutory appeal, contested both "the correctness of the District Court's finding of purposeful segregation and the propriety of its order of interdistrict relief to remedy that segregation." Morrilton School District No. 32 v. United States, 606 F.2d 222, 225 (8th Cir.1979) (en banc ), cert. denied, 444 U.S. 1071, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980). This Court affirmed. See 606 F.2d at 229.
 
 
 5
 In 1980, the local school districts moved to reinstate the State and the Department of Education as parties. The District Court granted the motion and then ordered the State to pay any costs the local school districts incurred as a result of implementing the desegregation plan. The District Court did not hold an evidentiary hearing on the issue of the State's liability, instead predicating the State's liability on the findings made in 1973 after the State's dismissal from the lawsuit. The court later modified its order to include attorneys' fees as part of the costs and referred to a magistrate petitions from the South Conway and Nemo Vista School Districts for reimbursement of these costs. After a hearing the magistrate issued a report. The District Court adopted the report and directed the State to reimburse Nemo Vista for attorneys' fees and other costs in the amount of $33,469.33 and to reimburse South Conway for attorneys' fees and other costs in the amount of $1,027,576.44. Both amounts are accruing interest at 9.08% per annum from May 7, 1980.II.
 
 
 6
 The State first asserts that the District Court's reinstatement of it as a party was erroneous and not supported by the legal authorities relied upon by the court. The State argues that the District Court's post-trial denial of the Government's motion to reinstate the State as a party, see United States v. Arkansas, slip op. at 2-3 (July 26, 1973), made the dismissal a final, appealable order. Since the dismissal was not appealed, the State contends that the doctrine of res judicata now bars reinstatement.
 
 
 7
 The effect of a dismissal normally is governed by Rule 41 of the Federal Rules of Civil Procedure. Rule 41(b) provides that "[u]nless the court in its order for dismissal otherwise specifies, a dismissal ... operates as an adjudication on the merits." Rule 41(b), however, is tempered by Rule 54(b), which provides that any order or decision adjudicating "the rights and liabilities of fewer than all the parties" does not result in a final judgment until the entry of judgment concerning the remaining parties, unless the court expressly directs entry of judgment upon determining that there is no just reason for delay. See Fed.R.Civ.P. 54(b). The District Court relied primarily upon Rule 54(b) of the Federal Rules of Civil Procedure as its authority for reinstating the State as a party, observing that the "dismissal of a party under the provisions of Rule 54(b) ... absent an express direction of entry of judgment is interlocutory when fewer than all of the defendants in a multi-party case are dismissed." United States v. Arkansas, No. LR-C-72-290, slip op. at 1 (E.D.Ark. April 9, 1980).
 
 
 8
 The District Court in 1973 neither included a determination that there was no just reason for delay nor expressly directed entry of a final judgment for the State when it dismissed the State as a party. Rule 54(b) thus specifically provides that "[i]n the absence of such determination and direction, ... the order ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed.R.Civ.P. 54(b). The dismissal of the State as a party was not raised in the 1979 appeal. That appeal was interlocutory in nature and addressed only the liability of the local school districts and the propriety of interdistrict relief. See Morrilton School District No. 32 v. United States, 606 F.2d 222 (8th Cir.1979) (en banc ), cert. denied, 444 U.S. 1071, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980); Morrilton School District No. 32 v. United States, 606 F.2d 222 (8th Cir.1979) (order granting leave to take interlocutory appeal). Similarly, after the State was reinstated in 1980 and the District Court certified that its order was a final judgment, this Court nonetheless refused to decide whether the reinstatement was proper, finding that "the district court's orders [did] not constitute a final decision upon which the jurisdiction of this court may be invoked." United States v. Arkansas, 632 F.2d 712, 714 (8th Cir.1980). Thus, a final judgment adjudicating the rights and liabilities of all the remaining parties was not entered in this case until December 28, 1984. See United States v. Arkansas, No. LR-C-72-290 (E.D.Ark. Dec. 28, 1984) (final judgment). It is this judgment from which the State now appeals. The doctrine of res judicata therefore is simply inapplicable, for there has been no earlier final judgment from which the State could appeal. Thus, we conclude that the District Court's reinstatement of the State as a party was proper under Rule 54(b).
 
 
 9
 The fact that the State was dismissed from the proceedings in 1973, however, raises another question. The State asserts that since the District Court has never made any finding of liability on the part of the State agents remaining in the proceedings after the State's dismissal, the due process clause requires a hearing in which the State may offer evidence indicating "its activities in other counties to achieve integration of local schools." Brief for Appellants at 15. Although we are uncertain what evidence the State might present to insulate itself from liability, we agree with the State's argument that the due process clause requires that the State have an opportunity to be heard before liability may be imposed. See Boddie v. Connecticut, 401 U.S. 371, 377-78, 91 S.Ct. 780, 785-86, 28 L.Ed.2d 113 (1971); Mullane v. Central Hanover Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Hansberry v. Lee, 311 U.S. 32, 40-41, 61 S.Ct. 115, 117-18, 85 L.Ed. 22 (1940). In Mullane, the Supreme Court noted that the deprivation of an interest protected under the due process clause requires "notice and opportunity for hearing appropriate to the nature of the case." 339 U.S. at 313, 70 S.Ct. at 656. There is no question in this case that the State had notice of the claims asserted against it. What is missing was any opportunity before liability was imposed for the State to absolve itself. We therefore remand this case to the District Court for a hearing to allow the State this opportunity. We note, however, that the appropriate inquiry on remand will not be the State's "activities in other counties to achieve integration of local schools" as the State contends in its brief. Rather, the relevant questions will be whether the State took any "remedial action[s] to require adequate educational opportunities for blacks" or took any actions to "dismantle the segregated school system ... in the defendant school districts in particular." Little Rock School District v. Pulaski County Special School District No. 1, 778 F.2d 404, 413 (8th Cir.1985) (en banc ). Further, as we noted in Little Rock, the State's "adherence to a particular policy or practice, 'with full knowledge of the predictable effects ... may be considered' " in determining whether the State should be held liable. Id. at 410 (citation omitted).[1]
 
 III.
 
 10
 In the event that after the required hearing the District Court should find the State liable for the racially segregated schools in Conway County, we briefly note our views concerning the award of attorneys' fees as part of the costs of the remedy. In its award, the District Court included the local school districts' attorneys' fees resulting both from the implementation of the consolidation order and from defending the lawsuit and pursuing appeals. The State asserts that the attorneys' fees award neither qualifies as an exception to the "American rule" requiring parties to bear their own legal expenses nor falls within a statutory provision allowing the award of attorneys' fees. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 257-59, 95 S.Ct. 1612, 1621-22, 44 L.Ed.2d 141 (1975). The school districts concede this point but argue that the award was proper as an exercise of the court's inherent powers to devise equitable remedies in desegregation cases. See Brief for Appellee at 9, citing Swann v. Charlotte-Mecklenberg Board of Education, 402 U.S. 1, 15, 91 S.Ct. 1267, 1275, 28 L.Ed.2d 554 (1971) (district courts have broad equitable powers to remedy past wrongs in desegregation cases).
 
 
 11
 In our view, assuming that the State ultimately is held liable for the costs of consolidation, the District Court's award of attorneys' fees incurred in connection with the implementation of the consolidation order then would be proper under the court's broad equitable powers in desegregation cases because these costs would not have occurred in the normal operation of the school system. See Swann, 402 U.S. at 15, 91 S.Ct. at 1275. An award for attorneys' fees that the districts incurred in defending and appealing the original lawsuit, however, could not be sustained. The school districts were not compelled by the State to mount the vigorous defense that they in fact mounted and they were not required to pursue appeals from the District Court's decision. The school districts made their own decisions regarding legal strategy and the vigor with which the lawsuit would be resisted, and we decline to extend responsibility to the State for costs associated with those decisions.
 
 
 12
 The judgment of the District Court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 We wish to emphasize that our conclusion that the State is entitled to a hearing derives from the fact that the District Court never found the State defendants who remained in the case after the State's dismissal liable for the segregation in Conway County. That distinguishes this case from our decision in Little Rock. Our decision in the Little Rock case rested on the District Court's extensive findings that the State, through the State Board of Education, acted to perpetuate racially segregated schools in the school districts that were the subjects of the litigation