838 F.2d 260
 44 Ed. Law Rep. 120
 Kalima JENKINS, by her friend, Kamau AGYEI; Carolyn Dawson,
by her next friend, Richard Dawson; Tufanza A. Byrd, by her
next friend, Teresa Byrd; Derek A. Dydell, by his next
friend, Maurice Dydell; Terrance Cason, by his next friend,
Antoria Cason; Jonathan Wiggins, by his next friend,
Rosemary Jacobs Love; Kirk Allan Ward, by his next friend,
Mary Ward; Robert M. Hall, by his next friend, Denise Hall;
Dwayne A. Turrentine, by his next friend, Shelia
Turrentine; Gregory A. Pugh, by his next friend, David
Winters, on behalf of themselves and all others similarly
situated; and American Federation of Teachers, Local 691,
v.
The STATE OF MISSOURI; Honorable John Ashcroft, Governor of
the State of Missouri; Wendell Bailey, Treasurer of the
State of Missouri; Missouri State Board of Education,
Roseann Bentley, Dan Blackwell, Terry A. Bond, President,
Delmar A. Cobble, Grover Gamm, Jimmy Robertson, Robert L.
Welling, Donald E. West, Members of the Missouri State Board
of Education, Arthur L. Mallory, Commissioner of Education
of the State of Missouri, Appellees,
and
School District of Kansas City, Missouri, Appellant,
and Claude C. Perkins, Superintendent thereof.
Kalima JENKINS, by her friend, Kamau AGYEI; Carolyn Dawson,
by her next friend, Richard Dawson; Tufanza A. Byrd, by her
next friend, Teresa Byrd; Derek A. Dydell, by his next
friend, Maurice Dydell; Terrance Cason, by his next friend,
Antoria Cason; Jonathan Wiggins, by his next friend,
Rosemary Jacobs Love; Kirk Allan Ward, by his next friend,
Mary Ward; Robert M. Hall, by his next friend, Denise Hall;
Dwayne A. Turrentine, by his next friend, Shelia
Turrentine; Gregory A. Pugh, by his next friend, David
Winters, on behalf of themselves and all others similarly
situated; Appellees, and American Federation of Teachers, Local 691,
v.
The STATE OF MISSOURI; Honorable John Ashcroft, Governor of
the State of Missouri; Wendell Bailey, Treasurer of the
State of Missouri; Missouri State Board of Education,
Roseann Bentley, Dan Blackwell, Terry A. Bond, President,
Delmar A. Cobble, Grover Gamm, Jimmy Robertson, Robert L.
Welling, Donald E. West, Members of the Missouri State Board
of Education, Arthur L. Mallory, Commissioner of Education
of the State of Missouri, Appellants,
and
School District of Kansas City, Missouri, and Claude C.
Perkins, Superintendent thereof, Appellee.
Kalima JENKINS, by her friend, Kamau AGYEI; Carolyn Dawson,
by her next friend, Richard Dawson; Tufanza A. Byrd, by her
next friend, Teresa Byrd; Derek A. Dydell, by his next
friend, Maurice Dydell; Terrance Cason, by his next friend,
Antoria Cason; Jonathan Wiggins, by his next friend,
Rosemary Jacobs Love; Kirk Allan Ward, by his next friend,
Mary Ward; Robert M. Hall, by his next friend, Denise Hall;
Dwayne A. Turrentine, by his next friend, Shelia
Turrentine; Gregory A. Pugh, by his next friend, David
Winters, on behalf of themselves and all others similarly
situated; Appellants, and American Federation of Teachers, Local 691,
v.
The STATE OF MISSOURI; Honorable John Ashcroft, Governor of
the State of Missouri; Wendell Bailey, Treasurer of the
State of Missouri; Missouri State Board of Education,
Roseann Bentley, Dan Blackwell, Terry A. Bond, President,
Delmar A. Cobble, Grover Gamm, Jimmy Robertson, Robert L.
Welling, Donald E. West, Members of the Missouri State Board
of Education, Arthur L. Mallory, Commissioner of Education
of the State of Missouri, Appellees,
and
School District of Kansas City, Missouri, and Claude C.
Perkins, Superintendent thereof.
 Nos. 87-2075, 87-2076 and 87-2077.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 13, 1987.
Decided Jan. 29, 1988.
Rehearing and Rehearing En Banc Denied in No. 87-2076 April
13, 1988.
Rehearing and Rehearing En Banc Denied Nov. 9, 1989.
 
 Jay Topkis, New York City, Russell E. Lovell, II, Associate Dean, Drake University Law School, Des Moines, Ia. for Jenkins.
 Patricia Brannan, Washington, D.C. for Kansas City School District.
 Bruce Farmer, Jefferson City, Mo., for State of Missouri.
 Before LAY, Chief Judge, HEANEY and JOHN R. GIBSON, Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 The award of attorneys' fees in the Kansas City, Missouri school desegregation case has resulted in this trio of appeals. The district court[1] awarded plaintiffs' co-counsel, Arthur Benson, and the Legal Defense Fund of the NAACP (LDF) fees and expenses for services rendered in the litigation, imposed solely against the State of Missouri. The district court denied the application of the Kansas City, Missouri School District (KCMSD) for attorneys' fees. On appeal the State of Missouri argues that the district court award compensated plaintiffs' counsel for time spent on unsuccessful claims and the fee should have been reduced because of plaintiffs' partial success; that there was error in awarding an hourly rate based upon a delay in payment factor because this is an award of interest against the State prohibited by the eleventh amendment; that 50 percent of the fee should have been imposed on KCMSD; and that the fees and expenses were unreasonable. KCMSD argues that as a party seeking to enforce the civil rights laws through litigation and as a prevailing party, it was eligible for an award of attorneys' fees. Plaintiffs argue that the district court erred in not enhancing their fee to compensate for the risk plaintiffs' counsel assumed. The judgment of the district court is affirmed.
 
 
 2
 The school desegregation case was filed in 1977 and the history of this litigation is outlined with a broad brush in this court en banc's opinion. Jenkins v. State of Missouri, 807 F.2d 657, 661-62 (8th Cir.1986) (en banc), cert. denied, --- U.S. ----, 108 S.Ct. 70, 98 L.Ed.2d 34 (1987). Plaintiffs submitted a detailed application for fees under 42 U.S.C. Sec. 1988 (1982).[2] The State filed a response cataloging specific items in the fee applications it deemed excessive, and the plaintiffs responded with an item-by-item rebuttal of the State's objections. Evidence was presented at a hearing.
 
 
 3
 The district court recognized that plaintiffs are entitled to attorneys' fees if they succeeded on any significant issue in the litigation. It found the plaintiffs were undisputedly prevailing parties.
 
 
 4
 The district court based its fee calculation on the number of hours and amount of expenses the plaintiffs submitted. The plaintiffs had cut their total hours to delete time spent on unsuccessful interdistrict claims against federal, Kansas and suburban school district defendants. The court adopted the plaintiffs' adjusted request as the basis for the number of reasonable hours, rejecting the State's arguments for further cuts because it found that the remaining hours were either expended solely on the successful claims or were "so closely interrelated" with them "that they cannot be separated or reduced by some arbitrary percentage." Jenkins v. Missouri, No. 77-0420-CV-W-4, slip. op. at 3 (W.D.Mo. May 11, 1987).
 
 
 5
 The district court concluded that the hours submitted by the plaintiffs after their suggested reductions for time spent on unsuccessful claims represented the time reasonably spent on this litigation, except for 3.5 of the hours requested for LDF attorney Liebman. The court also determined that the hours and expenses submitted by LDF and Benson for litigating fee requests were reasonable and allowed the expenses and a fee based on the hours submitted.
 
 
 6
 The court then turned to the determination of an hourly rate. It found that Benson's rate would fall at the higher end of a range of $125 to $175 per hour. In doing so it considered the attorney's customary fee, his experience, reputation and ability. In addition, because the application was for services rendered from March, 1979 through June, 1986, the court deemed it essential that the hourly rate include compensation for the delay in payment. In light of delay, preclusion from other employment and the undesirability of the case, the court determined that an hourly rate of $200 per hour was reasonable.
 
 
 7
 The court determined the applicable rate for LDF's fees to be that of the locality of the litigation, Kansas City, rather than New York. It determined that a fee was appropriate for the representation by non-profit counsel and considering compensation for delay in payment awarded LDF fees at the current rather than historical rates.
 
 
 8
 The court rejected plaintiffs' claims for enhancement of the fee for quality of representation and risk of non-payment, finding that the quality of representation was included in the determination of the hourly rate. It rejected the argument that there should be upward adjustment for risk of loss because it found the plaintiffs' likelihood of success in their claim against the State was very high, the risk of non-payment slight, and the small risk of non-payment was fully reflected in the reasonable attorneys' fee calculated by the court.
 
 
 9
 The district court awarded Benson and his staff a total of $1,687,139.92 for fees and expenses rendered from March 1979 to June 30, 1986, and for the fees and expenses incurred in litigating the fee application. As Benson had received $347,332.93 of this amount, the balance due was stated to be $1,339,806.99. The court awarded LDF a total of $2,323,730.60 for fees and expenses through May 31, 1985, and $42,145.14 for litigation of the fees and expenses issue.
 
 
 10
 The court amended its order on July 14, 1987 to include an additional $37,950.00 fee award to Benson for monitoring the remedial plan in 1985-86, based on an hourly rate of $125 per hour for Benson, and $3,478.00 in expenses so incurred.
 
 
 11
 In ruling on KCMSD's fee application, the court noted that it had found in favor of KCMSD on its cross-claim against the State of Missouri, but that the cross-claim simply reiterated plaintiffs' allegations and that the same remedial plans would have been ordered even if KCMSD had not reiterated plaintiffs' allegations in its cross-claim. The district court also observed that KCMSD was adjudged liable and ordered to pay 50 percent of the costs of the remedy. See Jenkins, 807 F.2d at 684-85. It concluded that because KCMSD had violated the constitution by adopting policies which perpetuated rather than eliminated segregation, it was inappropriate to award attorneys' fees to a constitutional violator.
 
 
 12
 In determining who should pay the plaintiffs' fee, the court observed that the State of Missouri was the primary constitutional violator. Moreover, the district court noted that KCMSD had cooperated closely with the plaintiff and in fact had originally been a plaintiff before the court realigned it as a defendant in 1978. Also, KCMSD had admitted liability prior to trial, while the State had persisted in denying liability throughout the ten and a half month trial on liability issues. Accordingly, the court concluded that KCMSD would not be liable for the attorneys' fees and expenses and that the award of fees should be imposed solely against the State.
 
 
 13
 Before we consider the contentions of the parties with respect to the fee, we reiterate the concern of the Supreme Court in Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), that the attorneys' fee issue should not result in a second major litigation and that ideally the litigants will settle the amount of the fee. Id. at 437, 103 S.Ct. at 1941.
 
 
 14
 I. Missouri's Appeal.
 
 
 15
 The State first argues that the district court erred in compensating the plaintiffs for time spent on the unsuccessful claims against prevailing defendants and in failing to further reduce the compensable hours due to plaintiffs' partial success as compared to the scope of the litigation as a whole. The State points out that the district court accepted the Hensley reductions made by plaintiffs, which resulted in a fee based on roughly 85 percent of the total hours worked, in spite of plaintiffs' lack of success on their interdistrict claim.
 
 
 16
 Hensley v. Eckerhart provides the guidance for setting fee awards in cases where plaintiffs were less than totally successful:
 
 
 17
 Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the award of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.
 
 
 18
 461 U.S. at 440, 103 S.Ct. at 1943.
 
 
 19
 In this case, the plaintiffs made unsuccessful claims against the State as well as the suburban, federal, and Kansas defendants for interdistrict relief. They also made successful intradistrict claims against the State and KCMSD. The district court found that the plaintiffs appropriately excluded hours that did not relate to the claims on which plaintiffs prevailed, and that the remaining hours either related solely to the successful claims or related to them as well as to unsuccessful claims and the time could not be set aside as devoted to the unsuccessful claims. This allocation of hours among the various claims is a finding of fact, which we can reverse only if clearly erroneous. See City of Riverside v. Rivera, 477 U.S. 561, 106 S.Ct. 2686, 2693, 91 L.Ed.2d 466 (1986); 106 S.Ct. at 2699 (Powell, J. concurring).
 
 
 20
 The State argues that reduction of the hours worked by only about 15% cannot be an adequate reduction for the time spent on claims against prevailing defendants. It is true that much of the testimony and much of the effort at trial was pointed toward relief that was not obtained. Our acquaintance with the record in this case from consideration of the appeal on the merits convinces us that many of the issues were separate in nature, but also that a substantial portion of the testimony that bore upon the unsuccessful claims was closely interrelated with the remaining claims. The parties briefed this question in detail before the trial court, explaining why they believed each time entry was or was not compensable. Were we to fix the initial percentage reduction of the time spent by plaintiffs' counsel, we might not have arrived at the same result as the district court. However, upon review of the record, we cannot say that the district court's finding was clearly erroneous, and we may not substitute our own findings for those of the district court. See Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).
 
 
 21
 The state argues that the district court failed to consider the degree of success obtained as required by Hensley. While the district court could have been more explicit in this respect, we are satisfied that the parties forcefully brought to the attention of the district court the analysis required by Hensley and that the district court faithfully applied Hensley in awarding the fee. In focussing on the time relating solely to the successful claims or so closely interrelated to those claims that it could not be separated or reduced and determining a reasonable fee, the district court gave proper weight to the degree of success. See McCurry v. Tesch, 824 F.2d 638, 642 (8th Cir.1987).
 
 
 22
 The State's proposed second reduction would amount to a double deduction by taking away hours relating to the successful claim because of unsuccessful ones, which have already been the subject of reduction. "A court should not disallow attorney hours related and necessary to successful claims." Catlett v. Missouri Highway and Transportation Commission, 828 F.2d 1260, 1270 (8th Cir.1987); see Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1137 (11th Cir.1984). A second Hensley deduction is not appropriate. Accord Rogers v. Okin, 821 F.2d 22, 25, 29 (1st Cir.1987), petition for cert. filed (Nov. 3, 1987) (district court correctly deleted only time wholly unrelated to successful claim).
 
 
 23
 The State next argues that the district court erred in considering delay in payment as a factor in setting plaintiffs' attorneys' hourly rates. The State relies on Library of Congress v. Shaw, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), and Rogers v. Okin, 821 F.2d 22 (1st Cir.1987), for the proposition that the district court's consideration of delay constituted an award of interest that violated the eleventh amendment. We are not persuaded by this argument.
 
 
 24
 Shaw involved an award of attorneys' fees in a Title VII case against the federal government, in which the district court increased the lodestar by 30% to compensate for delay in payment. The Supreme Court reversed on the grounds that the award of interest on the fees was forbidden by the "no-interest" rule, which requires a specific waiver of the federal government's sovereign immunity with regard to interest, in addition to the waiver of immunity on the underlying cause of action.
 
 
 25
 In Rogers the First Circuit analogized from Shaw to forbid an award of fees against a state based on current hourly rates. 821 F.2d at 26-28. We cannot agree with the Rogers court that the holding in Shaw is applicable in a case involving eleventh amendment, rather than federal sovereign immunity, or to a case where the court awards current rates or considers delay as one factor in setting a compensatory fee award.
 
 
 26
 First, Shaw was expressly based on the "no interest" rule of statutory interpretation applicable in suits against the federal government. 106 S.Ct. at 2962-63. Rogers does not explain why it considers Shaw's federal sovereign immunity holding applicable in an eleventh amendment setting, and indeed Rogers acknowledges that the two areas of law carry "different standards of statutory interpretation." 821 F.2d at 27. We see no reason to extend Shaw to the body of eleventh amendment law, which was not covered by its rationale.
 
 
 27
 Second, Rogers assumes that compensation for delay equates with prejudgment interest, and we are not satisfied that it does. Shaw leaves open a distinction between a separately stated enhancement for delay, such as the thirty percent enhancement in Shaw, which it regarded as interest, and merely considering delay as one factor in setting the hourly fee, as the district court did in this case. Judge Ginsburg dissented from the Court of Appeals decision allowing interest in Shaw, Shaw v. Library of Congress, 747 F.2d 1469, 1485-93 (D.C.Cir.1984), arguing that "use of current rather than the historical hourly rates in order to compensate for delay, or use of historical rates that were based on expected delay ... would not run afoul of the no-interest rule." 106 S.Ct. at 2961 (summary by Blackmun, J.). In the Supreme Court's opinion, Justice Blackmun adverted to Judge Ginsburg's dissent without disapproval. Id.
 
 
 28
 At any rate, the eleventh amendment is not a barrier to recovery of fees against a state under section 1988, see generally Hutto v. Finney, 437 U.S. 678, 693-94, 98 S.Ct. 2565, 2574-75, 57 L.Ed.2d 522 (1978), and the courts have regularly interpreted section 1988 to permit compensation for delay in the payment of fees, e.g., Sisco v. J.S. Alberici Construction Co., 733 F.2d 55, 59 n. 3 (8th Cir.1984); Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 951, 955 (1st Cir.1984); Daly v. Hill, 790 F.2d 1071, 1081 (4th Cir.1986); Lightfoot v. Walker, 826 F.2d 516, 523 (7th Cir.1987); Jordan v. Multnomah County, 815 F.2d 1258, 1262-63 n. 7 (9th Cir.1987); Ramos v. Lamm, 713 F.2d 546, 555 (10th Cir.1983); Gaines v. Dougherty County Board of Education, 775 F.2d 1565, 1572 (11th Cir.1985). In Pennsylvania v. Delaware Valley Citizens' Council, --- U.S. ----, 107 S.Ct. 3078, 3081-82, 3099, 97 L.Ed.2d 585 (1987), both the majority and dissenting justices seem to have approved award of delay compensation under the "typical fee-shifting statute." But the Rogers court premised its holding on its conclusion that Sec. 1988 does not permit compensation for delay: "Our problem in the instant case is that Congress has not yet made any statement suggesting that a Sec. 1988 attorney's fee award should include prejudgment interest." 821 F.2d at 27. The Rogers court's decision that section 1988 does not permit delay compensation runs counter to the generally accepted view of that statute, and we will not disregard the established body of section 1988 law.
 
 
 29
 We hold that the district court properly considered delay in establishing the hourly rate.
 
 
 30
 The State also argues that the district court erred in allowing fees for paralegals and law clerks in excess of $15 per hour, which the State "suggests" is the cost to plaintiffs' attorneys of hiring the clerks and paralegals. We recognize that other courts have approached this question differently, some viewing paralegal work as a cost to be reimbursed and others as a portion of the fee, to be given market treatment. This circuit has not resolved this question, although we have stated that "[p]aralegal fees should be allowed if reasonable and not duplicative of other legal fees." Hawkins v. Anheuser-Busch, Inc., 697 F.2d 810, 817 (8th Cir.1983). We believe that market considerations should govern, but it is not necessary to adopt an ironclad rule in this case. Suffice it to say that the district court found that $40 per hour for paralegals and $35 per hour for law clerks were reasonable fees, slip op. at 7, and we cannot say its determination was clearly erroneous.
 
 
 31
 The State raises numerous other issues dealing with granting plaintiffs' excessive hourly billing rates and litigation expenses, particularly expert witness fees for James Anderson. While we acknowledge that some of the State's arguments have some force, we conclude that the district court's determinations in these respects were not clearly erroneous.
 
 
 32
 In its appeal against the KCMSD the State argues that the district court erred in failing to impose 50 percent of the liability for fees and expenses on KCMSD.[4] The district court justified the allocation of the fee by pointing to its earlier conclusion that the State of Missouri was the primary constitutional violator. By contrast KCMSD did not cause the unlawful segregation but simply failed, as did the State, to disestablish the dual school system created by the State of Missouri and adopted policies which were ineffective in eliminating the unlawful segregation. Moreover, the court pointed to the fact that KCMSD had cooperated with the plaintiffs and had conceded liability prior to trial, while the State denied liability, thereby contributing to the necessity of a ten and a half month trial. Thus, in effect the district court concluded that KCMSD minimized the need for plaintiffs to incur attorneys' fees, while the State maximized the need.
 
 
 33
 The district court based its award on the defendants' relative degrees of culpability and the time the plaintiffs were forced to spend litigating against the respective defendants. Both factors are appropriate considerations in determining who must shoulder the fees award. See Rose v. Nebraska, 748 F.2d 1258, 1264 (8th Cir.1984), cert. denied, 474 U.S. 817, 106 S.Ct. 61, 88 L.Ed.2d 50 (1985), and Charles v. Coleman, 689 F.2d 774, 777 (8th Cir.1982) (degree of liability considered in allocating responsibility for fees); Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 960 (1st Cir.1984); Southeast Legal Defense Group v. Adams, 657 F.2d 1118, 1125-26 (9th Cir.1981) (relative time); see generally Little Rock School District v. Pulaski County Special School District No. 1, 787 F.2d 372, 374 (8th Cir.) (Arnold, J., concurring and dissenting), cert. denied, 476 U.S. 1186, 106 S.Ct. 2926, 91 L.Ed.2d 554 (1986) (relative culpability and relative litigation time relevant).
 
 
 34
 The State argues that fees should be allocated in the same percentages as liability for the costs of the substantive relief. However, the criteria for liability on the merits and for liability for fees are different--obviously, the court could not consider the amount of time spent litigating against the respective defendants when it apportioned liability for the substantive relief, but that is an appropriate consideration in apportioning liability for fees.
 
 
 35
 The district court's allocation of fees is reversible only in the event of abuse of discretion. See Adams, 657 F.2d at 1126. The reasons given by the district court in this case adequately supported its decision to place responsibility for the fees on the State.
 
 II. KCMSD'S Appeal
 
 36
 We reject KCMSD's argument that it is entitled to attorneys' fees. In essence, the district court concluded that KCMSD in its cross-claim against the State simply reiterated claims made by the Jenkins class and insofar as KCMSD had been improved by the remedial plans, these plans would have been ordered as a result of plaintiffs' claims regardless of KCMSD's cross-claim. In addition, KCMSD had been adjudged a constitutional violator and the court determined it was therefore inappropriate to award it attorneys' fees. Under section 1988 a prevailing plaintiff is entitled to an award of attorneys' fees " 'unless special circumstances would render such an award unjust.' " S.Rep. No. 94-1011, 94th Cong. 2d Sess. 4, reprinted in 1976 U.S.Code Cong. & Admin.News 5908, 5912. Though a district court's discretion in determining when such special circumstances exist is narrowly limited, see New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 68, 100 S.Ct. 2024, 2033, 64 L.Ed.2d 723 (1980) (title VII), the district court did not abuse its discretion in finding them here.
 
 
 37
 KCMSD cites our case of United States v. Arkansas, 791 F.2d 1573 (8th Cir.1986), in support of its argument that the court should not have considered KCMSD's role as constitutional violator in determining that special circumstances would make an award of attorneys' fees in favor of KCMSD unjust. There, while the school districts had been held liable, the district court attempted to assess the entire cost of consolidating against the state, based on a finding that gerrymandering had resulted from the requirements of Arkansas law mandating segregation. 791 F.2d at 1575. In contrast to the situation assumed in United States v. Arkansas, in this case KCMSD was not only liable, but this court determined it was appropriate for KCMSD to pay 50% of the costs of the remedy. Jenkins, 807 F.2d at 684-86. Under these circumstances, the district court acted within its discretion in determining that it would be unjust to award KCMSD its fees against the State.
 
 
 38
 III. Plaintiffs' Appeal.
 
 
 39
 Plaintiffs argue that they are entitled to an enhancement of the fee awarded for Attorney Benson on the grounds that he is entitled to compensation for litigating the case on a contingency basis.
 
 
 40
 The district court's order was entered before the Supreme Court handed down its decision in Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, --- U.S. ----, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (Delaware Valley II ), which clarified the prerequisites for enhancement of a fee award for contingency. There was no majority opinion in Delaware Valley II, but Justice O'Connor's concurrence in judgment formed a majority for the holding that a contingency enhancement would be permissible in some circumstances, and another majority for the holding that such circumstances did not exist in the Delaware Valley II case. Justice O'Connor stated that contingency enhancements should be awarded only on proof that the relevant market compensates for contingency cases as a class, rather than on proof of any particular risks peculiar to the case in question. 107 S.Ct. at 3090-91. Specifically, Justice O'Connor would require proof that "without an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market.' " Id. at 3091 (quoting plurality opinion, 107 S.Ct. at 3089).
 
 
 41
 The district court in this case denied plaintiffs a contingency enhancement based on the plaintiffs' high likelihood of success in the particular substantive case at bar; the court's criteria were not those adopted by Justice O'Connor, who disapproved enhancement decisions based on "legal risks" peculiar to a particular case. However, plaintiffs would have fared no better under Justice O'Connor's analysis, since they failed to adduce proof that they would have faced substantial difficulties finding representation without an adjustment for contingency. While plaintiffs presented evidence that the Kansas City market generally compensates successful attorneys for assuming the risk of contingency cases, they did not introduce any evidence about availability of counsel to plaintiffs in the absence of contingency adjustments. Several attorneys testified that they would not have taken the case at all, and one civil rights litigator testified he would not have taken the case without regular payments. Testimony of these individuals comes short of proof that adjustment for contingency was a crucial factor in plaintiffs' ability to obtain counsel. See generally Blum v. Witco Chemical Corp., 829 F.2d 367, 380-81 (3d Cir.1987). On the record, we do not discover the proof required by Justice O'Connor as prerequisite for award of a contingency enhancement. See Catlett, 828 F.2d at 1271.
 
 
 42
 Plaintiffs also argue that they should receive enhancement for the risk inherent in this particular case in accordance with the Delaware Valley II views of Justice Blackmun. However, Justice O'Connor disapproved Justice Blackmun's suggestion of enhancement for extraordinary legal risk in a particular case, 107 S.Ct. at 3090, and therefore Justice Blackmun's views did not command a majority of the Court. Furthermore, the district court specifically held that this case did not involve extraordinary risk of failure and this finding is not clearly erroneous. Therefore, even under Justice Blackmun's views, the plaintiffs are not entitled to a contingency enhancement for extraordinary risk in this case.
 
 
 43
 The judgment of the district court is affirmed in all respects.
 
 
 
 [1]
 The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri
 
 
 [2]
 42 U.S.C. Sec. 1988 (1982) provides in relevant part:
 In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 
 
 [4]
 KCMSD and the State rely in their briefs on unpublished opinions of this court in the St. Louis school desegregation case. Under our Rule 8(i), unpublished opinions may not be cited except when related to the case at bar "by virtue of an identity between the parties or causes of action." In any event, we do not consider those opinions to be applicable or persuasive in considering the order before us