**James SANDERS, Plaintiff,**

**v.**

**Joseph STEWART, Acting Director of the Arkansas Department of Finance and Administration, Defendant.**

**Civ. No. LR–C–74–252.**

United States District Court,
E.D. Arkansas, W.D.

Oct. 11, 1991.

As Amended Oct. 17, 1991.

John W. Walker, Little Rock, Ark., for plaintiff.

Kay J. Demailly, Asst. Atty. Gen., Little Rock, Ark., for defendant.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

Pending before the Court is plaintiff's, James Sanders, motion for an award of attorneys' fees and costs, pursuant to the Civil Rights Attorney's Fee Award Act of 1976, 42 U.S.C. § 1988, for services rendered by counsel in this civil rights proceeding.

This lawsuit was filed on August 19, 1974, by Sanders on behalf of himself and all other black employees of the Arkansas Department of Finance and Administration (DFA) who were confronted with similar acts of discrimination on the part of defendant. This action was certified as a class action on January 23, 1980, with plaintiff serving as class representative on behalf of the following classes:

1.  Black persons who were employed by the Revenue Division of the Department of Finance and Administration of the State of Arkansas at any time between August 19, 1971, and the present, [alleging] racial discrimination with respect to initial job placement, promotion, transfer, job assignments, harassment while on the job and discharge. More specifically, the plaintiff is certified as a class representative with respect to claims based upon the application of educational requirements for job placement or promotion, including requirements that an employee have a college degree or a high school diploma.

2.  Those black employees of the Revenue Division of the Department of Finance and Administration of the State of Arkansas who claim that their rights under Title VII of the Civil Rights Act of 1964 have been violated by racial discrimination with respect to initial job placement, promotion, transfer, job assign-

ment, harassment while on the job, or discharge. This class also includes persons who claim racial discrimination in violation of Title VII on the basis of the educational requirements. This class includes only persons who were employees of the Revenue Division at any time on or after March 20, 1973.

3. Those black persons who on or after August 19, 1971, are or have been employees of [divisions] of the Department of Finance and Administration other than the Revenue Division, and who claim that the educational requirements referred to above violated their rights. . . .

4. All those black persons who are or have been since, March 20, 1973, employees of [divisions] of the Department of Finance and Administration other than the Revenue Division and who claim that their rights under Title VII have been violated by the educational requirements referred to above.

On October 3, 1983, following a lengthy trial, this Court entered its memorandum opinion and order holding that defendant had engaged in the following discriminatory employment practices[1]:

1. The Court held that the high school diploma requirement by DFA which served as a condition for initial employment or promotion was discriminatory and affects blacks at a considerable higher rate than whites. Accordingly, the Court enjoined DFA from making a high school diploma a condition for either initial employment or promotion.

2. The Court found that black employees had been subjected to a deleterious racial atmosphere which was enjoined by the Court.

3. The Court found that the defendant engaged in subjective promotional deci-

sions—due to the lack of an affirmative action policy—which were racially motivated.[2]

█ Given the fact that plaintiff did prevail in the three areas designated above, this Court has no difficulty in finding that plaintiff is the prevailing party in this proceeding because plaintiff acquired essentially the relief sought in his complaint. Moreover, the Court further finds that each of the three areas in which plaintiff succeeded involve significant issues that encompassed policies and practices, historical in scope, which limited employment opportunities of black persons by discriminating against them in the initial hiring process; in maintaining formal and informal education requirements in hiring, promotion, transfer and job assignment. This Court found that these practices disqualified blacks at a substantially higher rate than white persons and that such requirements were not related to the jobs for which they were used as prerequisites and had not been validated for job relatedness. Consequently, plaintiff is entitled to an award of attorneys' fee under 42 U.S.C. § 1988.

## A.  ATTORNEYS' FEES:

John W. Walker, Esq., claims 585.5 hours expended in the preparation and prosecution of this proceeding. Mr. Walker also seeks an hourly rate of $175.00 which results in a lodestar total of $102,462.50.

Ralph Washington, Esq., is claiming 1,025.89 hours and an hourly rate of $125.00. Henry Jones, Esq., is claiming 58.4 hours at an hourly rate of $150.00. John Sizemore, Esq., is claiming 58.4 hours and an hourly rate of $135.00 per hour. The lodestar totals for Washington, Jones and Sizemore are $128,236.25, $4,530.00 and $7,884.00, respectively.

1. By agreement of the parties, the issues were bifurcated. The Court's opinion of October 3, 1983, dealt exclusively with the issue of liability. The parties resolved the issue of relief by way of settlement, thus, not necessitating a trial on this issue.

2. The Court also found that plaintiff had failed to demonstrate that the requirement of a college

degree, as a minimum educational requirement for entry into certain technical, professional and managerial job classifications, i.e., Data Processing, Center Manager, Accountants, Auditors and Attorneys, had a disparate impact upon blacks in employment decisions. Consequently, plaintiff did not prevail on this issue.

The defendant objects to both, the number of hours claimed and the hourly rates requested for the following reasons: (1) that a substantial part of the hours claimed by Mr. Walker was spent conferring with an associate, Ralph Washington, Esq.; (2) that as experienced attorneys in the civil rights area, the hours claimed for preparation for trial are unreasonably high or excessive; (3) that plaintiff did not prevail on the issue involving the college degree requirement for certain managerial positions; and (4) there appears to be duplication of hours claimed on the part of Mr. Walker when the schedule of Mr. Washington is considered.

■ After carefully scrutinizing the fee schedules tendered by counsel for plaintiff, argument of the defendant and the record of this proceeding, as well as reviewing the relief that plaintiff and his class achieved as a consequence of this action, the Court finds that Mr. Walker's total number of hours claimed should be reduced to 531.6 hours. In other words, the Court is excluding 54 hours from the total number of hours submitted by Mr. Walker. Because of Mr. Walker's experience and skills, as well as his expertise, in the area of civil rights litigation, the Court is persuaded that the total number of hours claimed for preparation for trial is excessive. In addition, the Court is of the view that the reduction of the hours claimed avoids any duplication of services rendered and hours claimed by Mr. Washington. The Court is further persuaded that the hours claimed by Mr. Washington are excessive for preparation for trial when considering his experience in the area of civil rights litigation. Accordingly, Mr. Washington's hours are reduced to 995 hours. The Court is convinced that the hours claimed by Jones and Sizemore should not be reduced. The Court is of the view that the hours allowed Messrs. Walker, Washington, Jones and Sizemore were reasonably expended in the preparation and prosecution of this case when taking into consideration the complexity and novelty of the issues addressed. It is plain that all of the claims asserted by plaintiff were interrelated.

■ To say that plaintiff achieved substantial relief is, indeed, an understatement when considering the fact that the results obtained not only benefited plaintiff immensely, but to a class of black employees equally as much and equally effective for prospective black employees in the future. In other words, plaintiff's accomplishments are, indeed, monumental as well as noteworthy when it is realized that policies and practices of a state agency, with statewide influence frustrated efforts of black citizens for decades to gain equal employment opportunities, were nullified. Defendant was required to adopt and implement an affirmative action policy in lieu of subjective employment policies and practices. Given these circumstances, this Court cannot, in good conscience, reduce plaintiff's fee request on the theory that the plaintiff did not prevail on all claims asserted. See, *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). It goes without saying that this lawsuit has been a rather protracted proceeding.[3]

■ Relative to the hourly rates of $175.00, $125.00, $150.00 and $135.00 claimed by Messrs. Walker, Washington, Jones and Sizemore, respectively, the defendant argues that the Court should apply a "staggered fee arrangement" or an historical schedule that would take into consideration the various market rates for legal services between 1974, when this action was instituted, and the current time frame in order to avoid a windfall to plaintiff's attorneys. Defendant also asserts that the plaintiff allowed his case to "languish" with no action whatsoever being taken between December 22, 1974, and October 26,

---

**3.** The Supreme Court in *Hensley v. Eckerhart*, 461 U.S. at 437, 103 S.Ct. at 1941, noted that "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee." Consistent with the Supreme Court's admonition, this Court directed the parties to engage in set-

tlement discussion to the end that the litigants could agree upon a reasonable fee for plaintiff's attorneys. As a consequence, the parties have been involved in an ongoing negotiation since 1989. The Court was advised on September 25, 1991, that the parties had reached an impass and could not settle the issue.

1978; and that defendant should not be penalized for the lack of aggressiveness in pursuing this lawsuit on the part of plaintiff.

The Court is not impressed with defendant's argument that plaintiff did not exercise due diligence in the prosecution of this case after it was filed in 1974. The Court takes judicial notice of the fact that this case is one among many civil rights actions that remained inactive on the dockets in this district because of the lack of judges to deal with voluminous civil filings during the 1970's. The two or three judges then sitting in this district focused their time and expertise on criminal and emergency matters while civil actions in general, and civil rights cases in particular, were placed on the back burner, so to speak. At times, it was necessary for the Chief Judge for the Eighth Circuit Court of Appeals to assign district judges from other states to assist judges in the State of Arkansas to cope with voluminous filings. Indeed, plaintiff cannot be held wholly accountable for the inactive status of his case between 1974 and 1978.

This Court is persuaded that the requested hourly rate of each attorney is consistent with the rate in the Little Rock community currently for similar services performed by lawyers of comparable skills, experience and reputation. The Court is further persuaded that plaintiff's attorneys have tendered satisfactory evidence demonstrating the reasonableness of the requested hourly rate.[4] Additionally, the Court notes that plaintiff's request for attorneys'

fees covers services rendered from February, 1974 through October, 1988. The extensive delay involved here is, indeed, a factor that may be considered in "establishing the hourly rate." See: *Jenkins By AGYEI v. State of Missouri*, 838 F.2d 260, 266 (8th Cir.1988).

The evidence proffered include affidavits from attorneys in the Little Rock area who have extensive experience in contingent fee cases involving civil rights litigation or similar areas of the law. Melva Harmon, Esq., John L. Burnett, Esq., and John T. Lavey, Esq., have stated in their affidavits that they have been actively associated with civil rights litigation in excess of ten years and that in contingent fee cases, it is not unusual for an attorney to be "compensated at an hourly rate in excess of $350.00". These attorneys also state:

> [T]he issues which are at the heart of employment discrimination cases are considered unpopular by many. It is [our] understanding that many attorneys in this state are unwilling to even consider handling these cases, and that a number of lawyers who formerly handled such cases are no longer taking plaintiff's cases because of the uncertainty, expense, and time involved in taking them to trial.

Walter W. Davidson, Esq., who has been engaged in the practice of law since 1960 primarily in the commercial law area, i.e., administrative law, securities, banking, utilities and labor law, states:

---

**4.** John W. Walker, Esq., a graduate of Yale University School of Law, became actively engaged in the private practice of law in 1965, specializing in civil rights litigation. Since that time, Mr. Walker has been actively engaged, if not in fact lead counsel, in approximately 75 major civil rights cases. The appellate courts where he has practiced are the Fifth, Eighth, Ninth, Tenth, and Eleventh Courts of Appeal and the United States Supreme Court.

Ralph Washington, Esq., was admitted to the Bar of Arkansas in 1976, upon his graduation from the University of Arkansas School of Law, Fayetteville, Arkansas. Mr. Washington has served as a cooperating attorney in numerous civil rights cases with the NAACP Legal Defense Fund for nearly a decade. Washington joined the law firm of John W. Walker, P.A. in January

of 1979, where his practice has been focused on civil rights employment litigation.

Henry L. Jones, Esq., is a graduate of Michigan State Law School and a former law clerk of former Chief Judge G. Thomas Eisele. Prior to being appointed United States Magistrate Judge, approximately a decade ago, Judge Jones was actively involved in several prominent civil rights actions.

John Sizemore, Esq., who is now deceased, practiced law in the Little Rock, Arkansas, area for several years and during this period, was involved in several prominent civil rights actions. Either before or after practicing in the Little Rock area, Mr. Sizemore was a member of the faculty at Antioch Law School in Washington, D.C.

"I believe that a minimum enhancement of 35% of the normal hourly rate is appropriate in order to have this class of cases treated comparably to cases in other areas of the law."

Bud Whetstone, Esq., whose firm engages substantially in the area of personal injury, medical malpractice and product liability, states in his affidavit:

"In our practice we weigh each contingent case very carefully before accepting employment. The two prime factors are the likelihood of establishing liability, and the potential recovery. The potential recovery has to be many times what we could earn on an hourly basis, at least three to five times as much."

## B.  ENHANCEMENT:

█ Mr. Walker, as well as his associates, Washington, Jones and Sizemore, is asking for an enhancement to the extent of 25% for hours expended prior to the entry of judgment in this proceeding. The following schedule reflects the requested sums:

|  | HOURS | 25% ENHANCEMENT | TOTAL |
| --- | --- | --- | --- |
| John W. Walker | 456.2 | $43.75 | $19,958.75 |
| Ralph Washington | 505.0 | $31.25 | $15,781.25 |
| John Sizemore | 58.4 | $33.75 | $ 1,971.00 |
| Henry Jones | 30.2 | $37.50 | $ 1,132.50 |

Plaintiff argues that a 25% upward adjustment is essential in order to cope with the "local bar's increasing reluctance to accept straight contingency based on employment discrimination cases such as this one," and to minimize the difficulty that civil rights litigants face in finding competent counsel.

Defendant does not seriously challenge the requested enhancement, but simply contend this case is not unique warranting an enhancement. In essence, defendant argues that the lodestar fee based on the hours reasonably expended times a reasonable hourly rate will result in a reasonable fee without the need for an enhancement.

Woodson D. Walker, Esq., who has been engaged in the practice of law in the Little Rock community since 1976, and spent fifty percent of his time on civil rights cases, during the first two years of his practice, made the following observations in his affidavit:

"Although I did handle a number of civil rights matters in the years 1978 to 1982, in the last five years, I have not handled more than one case a year.

.    .    .    .    .

". . . I actively deemphasized my representation in these cases because they proved to be so financially unrewarding. Now I only take cases where the liability is clear, and where the client can pay all the costs, and a substantial noncontingent fee. Given those criteria, I, as indicated, generally only have one or less civil rights cases per year.

.    .    .    .    .

"My own experience with contingent cases is that the vast majority settle. Of the contingent cases I take, I always expect to make in excess of $200 an hour, although it is not uncommon for fees to range much higher than that on occasion."

Phillip J. Duncan, Esq., who was admitted to the practice of law in 1974, and whose practice is generally devoted to the civil trial area, including several civil rights actions, stated in his affidavit that many lawyers, in the Little Rock area, would be hesitant to handle complex civil rights cases without the enhancement factor in contingency fee cases.

Marquis E. Jones, Esq., whose legal practice is in the area of bankruptcy, personal injury, real estate and probate law, commented as follows in his affidavit:

"In the past, I have agreed to represent plaintiffs in employment discrimination cases on a contingent fee basis, that is, I would only be paid in the event that the plaintiff prevailed and I would receive my fees from the losing defendant and not from the plaintiff's damage award.

"I am no longer willing to accept plaintiffs' employment discrimination cases on a contingent fee basis. The reason for this is basically due to the fact that these cases are simply too risky and the potential attorneys' fee awards in the event that the plaintiffs prevail are too inadequate to make these cases economically feasible for me to take, particularly race discrimination cases. I refer these type of cases to other lawyers who may be willing to accept them."

Julius LeVonne Chambers, Esq., who is Director–Counsel of the NAACP Legal Defense and Educational Fund, made the following observations in his affidavit:

"It is my experience that many meritorious Title VII employment discrimination cases will not be brought unless a substantial fee enhancement above the normal hourly rates paid by noncontingent fee paying clients is given in cases where the plaintiffs are successful. Even with a substantial enhancement for contingency, it will still be difficult to attract experienced, competent counsel to handle class action cases.

.      .      .      .      .

"Title VII plaintiffs generally lack the finances to employ an attorney or to pay the costs necessary to prosecute their actions. Hence, attorneys agree to represent such plaintiffs on a contingent fee basis facing a risk of nonpayment and a risk of losing all money advanced for the costs of the litigation. In short, plaintiffs' counsel invest tremendous amounts of time and resources without any assurance of payment.

"Title VII class actions are particularly time consuming and expensive. This difficulty is often exacerbated in cases against government defendants where the cases are defended by government counsel. In such cases, the normal cost-benefit litigation evaluation commonly made by private, for-profit defendants (who bear the cost of defending with private counsel) may not be made by government defendants.

"Because of these risks it has been and remains difficult to staff Title VII cases with experienced and competent lawyers. Indeed, I am aware of the existence of only a handful of firms nationwide that spend more than 50% of their time prosecuting contingent Title VII litigation.

"It is my belief that the availability of fee enhancements for risk of nonpayment and results has allowed attorneys to agree to commit their time, energies and resources to risky Title VII litigation. If Title VII is to be enforced as Congress intended, it is imperative that fee enhancements continue to be available in such cases."

After carefully considering the numerous affidavits filed in this action, this Court is persuaded the market in the Little Rock community for legal services enhances fees for contingency as a class from two to three, if not in fact, four times the noncontingent rates and without the enhancement, plaintiff would have faced substantial difficulty in obtaining competent counsel in the Little Rock area, as well as in any other relevant area, in prosecuting this lawsuit. The Court is further persuaded that the 25% enhancement requested by both Messrs. Walker and Washington is reasonable as well as vital in order to attract competent counsel in the area of civil rights litigation in the Little Rock community. See: the concurring opinion of Justice O'Connor in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987).

Accordingly, the Court finds that Mr. Walker is entitled to an enhancement to the extent of 25% for 402.2 hours expended in this action prior to judgment. Mr. Washington is entitled to an enhancement to the extent of 25% for 475 hours.

Inasmuch as Henry Jones, Esq. and John Sizemore, Esq., participated in this proceed-

ing to a very limited degree and are no longer engaged in the general practice of the law and have not been for approximately a decade, the Court declines to grant an enhancement for these individuals.

■ The Court is further convinced that the request for reimbursement of costs in the sum of $5,080.00 appears to be reasonable and the Court will allow this request in its entirety. The defendant contends that the sum of $1,076.00 claimed for depositions and the sum of $242.00 claimed for postage should not be allowed. The Court finds that these expenditures were made in connection with the preparation of plaintiff's case for trial and defendant has failed to demonstrate that these expenditures were useless or excessive.

C. SUMMARY:

| ATTORNEYS | TOTAL HOURS | HOURLY RATE | TOTAL LODE-STAR | ENHANCEMENT | TOTAL |
|---|---|---|---|---|---|
| J. Walker | 531.6 | $175.00 | $ 93,030 | 402 hrs × $43.75= $17,587.50 | $110,617.50 |
| R. Washington | 995 | $125.00 | $124,375 | 475 hrs × $31.25= $14,843.75 | $139,218.75 |
| H. Jones | 30.2 | $150.00 | $ 4,530 | –0– | $ 4,530.00 |
| J. Sizemore | 58.4 | $135.00 | $ 7,884 | –0– | $ 7,884.00 |

Accordingly, a judgment will be entered in behalf of plaintiff and against defendant in the aggregate amount of $267,330.25.

IT IS SO ORDERED.